NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP No.  ID-13-1107-JuKiKu |
| | ) |
| BRUCE LEE ALLEN, dba Bruce Allen Construction, | ) Bk. No.  ID-09-41567-JDP |
| | ) |
| | ) |
| Debtor. | ) |
| _____ | ) |
| BRUCE LEE ALLEN, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) M E M O R A N D U M* |
| | ) |
| GARY L. RAINSDON, Chapter 7 Trustee; ZIONS FIRST NATIONAL BANK, | ) |
| | ) |
| | ) |
| Appellees. | ) |
| _____ | ) |

Argued and Submitted on November 22, 2013
at Pasadena, California

Filed – December 9, 2013

Appeal from the United States Bankruptcy Court
for the District of Idaho

Honorable Jim D. Pappas, Bankruptcy Judge, Presiding
_____

Appearances:   Appellant Bruce Lee Allen argued pro se; Daniel C. Green, Esq., of Racine, Olson, Nye, Budge & Baily, Chartered, argued for appellee Gary L. Rainsdon.
_____

Before:  JURY, KIRSCHER, and KURTZ, Bankruptcy Judges.

_____

    * This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Chapter 7[1] debtor Bruce Lee Allen appeals from the bankruptcy court's order approving a settlement agreement pursuant to Rule 9019 between appellee-trustee, Gary L. Rainsdon, and Zions First National Bank (Zions).  We AFFIRM.

## I.  FACTS[2]

**A.  Prepetition Events**

Debtor owned and operated Bruce Allen Construction, Inc., a construction and land development business located in Hailey, Idaho.  In connection with his business, debtor purchased commercial real property in Hailey known as the Davis Business Park that he wanted to develop into three commercial lots.

In April 2007, debtor borrowed $1,170,000 from Zions to refinance[3] and develop the property.  The loan was secured by a deed of trust against the property.  After the loan closed, debtor used some of the proceeds to make infrastructure improvements to the property.

A dispute later arose between the parties over Zions' alleged agreement with debtor to purchase one of the lots and have debtor construct a Zions branch on it.  Debtor asserted that:  Zions agreed to purchase one of the three lots for

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] Most of the undisputed facts are contained in the Settlement Agreement and the first amended complaint.

[3] Debtor used approximately $750,000 of the loan proceeds to discharge an existing debt with U.S. Bank which had been previously secured by the property.

$1,499,000; Zions hired debtor to construct a Zions branch office on the lot; Zions agreed that debtor should build the bank branch on a cost plus ten percent (10%) basis; and, in September 2007, Zions informed debtor that it wished to construct a kiosk/ATM on debtor's property prior to constructing a full bank branch. Debtor further alleged that Becky Kearns (Kearns), an employee of Zions, assured him on several occasions that Zions' Board of Directors approved the purchase of the lot and debtor's construction of the Hailey branch. However, in November 2008, Zions informed debtor that it could not complete the purchase of the lot for financial reasons.[4]

Zions acknowledged that it investigated the possibility of using one of debtor's lots for a branch office in Hailey or to construct a kiosk on the site. Zions also admitted that it had discussions with debtor, but contended that a contract was never reached. Zions denied debtor's other allegations.

On October 1, 2008, debtor became obligated to repay Zions' loan in full. Zions and debtor agreed to extend the maturity date for three months by way of a written loan extension agreement. Debtor failed to timely pay the loan when the extension expired and Zions commenced foreclosure proceedings.

**B. Bankruptcy Events**

To stop the foreclosure, debtor filed for relief under

_____

[4] Around this same time, Zions had ordered an appraisal of the property through Mountain States Appraisal and Consulting, Inc., which was certified as completed on November 7, 2008, showing the fair market value of the three lots as $3.42 million.

-3-

chapter 11 on October 6, 2009. On June 3, 2010, the U.S. Trustee moved to have the case dismissed or converted to chapter 7 due to debtor's failure to file monthly operating reports and pay quarterly trustee fees. Debtor agreed to the conversion of the case. By order, the case converted to chapter 7 on July 20, 2010.

Shortly after the conversion of the case, debtor entered into an agreement for representation with the law firm of Johnson and Montelone, LLP (J&M), to pursue a lawsuit against Zions on a contingency basis. This agreement was not binding, since trustee had control of the claim. Thereafter, the bankruptcy court entered an order authorizing trustee to employ J&M as special counsel to pursue the estate's claims against Zions in the state court. During the pendency of the case, Zions was granted relief from stay so that it could foreclose upon the property, but the order authorizing the stay relief was subject to a stipulation that the order was without prejudice to the estate's claims against Zions.

In March 2011, J&M filed suit in the District Court of the Fifth Judicial District for the State of Idaho, County of Blaine, Case No. CV-2011-204, on behalf of trustee against Zions and Kearns. On June 28, 2011, J&M filed a first amended complaint alleging eleven counts, including counts for breach of contract and misrepresentation, among others. In lieu of an answer Zions moved to compel arbitration, which was granted. The parties agreed on a arbitrator with the American Arbitration Association (AAA).

As part of the arbitration process, Zions moved for summary

-4-

judgment, arguing that debtor had released Zions from all claims by executing the loan extension agreement. J&M filed a motion for partial summary judgment on count five for misrepresentation based on the deposition testimony of Kearns and other evidence. The arbitrator denied both motions finding that there were disputed issues of material fact.[5] Neither trustee nor his general counsel participated personally in this proceeding.

Thereafter, the parties participated in a mediation that resulted in the settlement between Zions and trustee. Zions agreed to pay trustee $550,000, to withdraw its proofs of claim against the estate which totaled approximately $1.28 million, and to waive any other claims against the bankruptcy estate. Trustee agreed to waive all claims that the estate had against Zions. In due course, trustee filed a notice of intent to settle the potential claims against Zions. Debtor objected to the proposed settlement based upon the dollar amount.[6] Trustee contended that debtor had no standing to object to the settlement.

In response to the objection, the bankruptcy court held an evidentiary hearing at which Mr. Johnson of J&M and trustee testified in support of the settlement and debtor testified against. Besides hearing the testimony, the bankruptcy court

---

[5] The arbitrator's findings for the rulings were not included in the record.

[6] Debtor had calculated his damages in excess of six million, including three million in punitive damages. At the evidentiary hearing, debtor's counsel stated that debtor's range of reasonableness was approximately half that amount, or three million.

frequently questioned the witnesses or their counsel about the underlying merits of the state court case and the calculation of damages. The bankruptcy court closed the evidence and continued the matter to February 15, 2013, so that it could review the record in detail.

After hearing final arguments, the court orally stated its findings of fact and conclusions of law approving the settlement on the record. The bankruptcy court also overruled trustee's objection to debtor's standing to contest the settlement. The court found that debtor had standing to object to the settlement because he had put on the kind of evidence to suggest that there was at least some prospect that if the litigation were to turn out favorable that there may be a surplus.[7] The court entered the order approving the settlement on February 27, 2013. Debtor timely appealed.

## II.   JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III.   ISSUE

Did the bankruptcy court abuse its discretion in approving the settlement?

## IV.   STANDARD OF REVIEW

We review the bankruptcy court's decision to approve a settlement for an abuse of discretion. <u>Martin v. Kane (In re A & C Props.)</u>, 784 F.2d 1377, 1381 (9th Cir. 1986). The

---

[7] No one has challenged debtor's standing on appeal.

court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011). Because the bankruptcy court identified and applied the correct legal standard, the only question on appeal is whether its determinations that the settlement was fair and equitable and in the best interest of the estate were clearly erroneous.

## V.  DISCUSSION

Rule 9019(a) authorizes the bankruptcy court to approve a settlement on motion by the trustee and after notice and a hearing. As the party proposing the compromise, the trustee bears the burden of proving that the settlement is fair and equitable and should be approved. In re A & C Props., 784 F.2d at 1382.

The bankruptcy court must conduct an inquiry into all "factors relevant to a full and fair assessment of the wisdom of the proposed compromise." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968). In conducting this inquiry, the bankruptcy court must consider: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. In re A & C Props., 784 F.2d at 1381.

The bankruptcy court has considerable discretion in

-7-

evaluating a proposed settlement because it "is uniquely situated to consider the equities and reasonableness [of it]. . . ." <u>United States v. Alaska Nat'l Bank (In re Walsh Constr., Inc.)</u>, 669 F.2d 1325, 1328 (9th Cir. 1982). "[A]s long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed." <u>In re A & C Props.</u>, 784 F.2d at 1381.

In this case, the bankruptcy court explicitly addressed each of the <u>A & C Props.</u> factors in its February 15, 2013, oral ruling. Point by point, the bankruptcy court extracted from the record facts addressing each of the factors necessary to a determination that the compromise was fair and equitable.

In addressing the probability of success factor, the bankruptcy court examined the strengths and weaknesses of both debtor's and Zions' cases. The court noted there were legal issues on both sides in contract and tort including (1) whether the statute of frauds precluded enforcement of an oral contract, (2) whether there was part performance of an oral agreement; (3) whether debtor's release of his claims against Zions in the loan extension agreement was enforceable; and (4) whether debtor could satisfy the elements for his claim of misrepresentation under the clear and convincing burden of proof under Idaho law. On the misrepresentation claim, the court noted that the heightened burden of proof could be a "substantial burden, especially in any close case. This appears to be a case that might be described as a close case." The court also observed that the case involved factual issues which ultimately could be

-8-

decided in either side's favor.  Finally, the bankruptcy court considered the difficulty of calculating damages in light of the economic downturn which may have caused debtor's loss as opposed to any wrongdoing by Zions.  Based upon the evidence, the bankruptcy court indicated that "the possibilities of success for Trustee and [debtor] in this action against the bank are, at best, uncertain, and the prospects for success are challenging . . . ."  Consequently, in the bankruptcy court's view, it was unclear which party would be successful.

In considering the second factor - the difficulties, if any, to be encountered in the matter of collection - the bankruptcy court attributed no weight to this factor because trustee conceded that collection of a judgment against Zions would probably not be an issue.

In addressing the third factor, the complexity of the litigation and the expense, inconvenience and delay in pursing it, the bankruptcy court found that the litigation was "complex" and that it would take the parties considerable time to prepare for and complete the arbitration.  The court also noted the possibility that any decision by the arbitrator could be appealed and that there would be additional costs beyond the special counsel's contingent fees.  Finally, the court observed that the delay factor in light of time value of money weighed in favor of settlement.

When considering the interests of creditors, the bankruptcy court found that this factor weighed in favor of settlement because the settlement would provide a significant distribution

to unsecured creditors.[8]  The court observed that if trustee pursued the lawsuit there was no guarantee that there would be a distribution, but, then again, there may be a large distribution.  After taking into account the time value of money, and acknowledging that this factor was not "crystal clear," the bankruptcy court concluded that the scales tipped slightly in favor of the settlement because it was significant in amount.

On appeal, debtor does not tell us which of the bankruptcy court's factual findings were clearly erroneous nor does he point out why.  Instead, debtor spends significant time responding to trustee's challenge to debtor's standing to object to the settlement.  However, debtor's standing is not relevant to our review in this appeal because the bankruptcy court overruled trustee's objection and found debtor had standing.  Trustee did not cross appeal on this issue.  Further, debtor raises many issues which were not raised in the trial court and, therefore, not considered.  We do not address these arguments for the first time on appeal.  Cold Mountain v. Garber, 375 F.3d 884, 891 (9th Cir. 2004).  Any remaining issues raised are without merit.

In sum, in approving the settlement, the bankruptcy court applied the correct legal rule, measuring the reasonableness of the compromise under the factors articulated in A & C Props. The bankruptcy court's findings and conclusions were supported

---

[8] At the evidentiary hearing, trustee stated that unsecured creditors would receive a dividend of approximately thirty-three percent.

by competent evidence in the record and were not illogical, implausible, or without support in inferences that may be drawn from the record. Accordingly, the court did not abuse its discretion in approving the settlement.

## VI. CONCLUSION

For these reasons, we AFFIRM.